

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MOHAMMAD JINNAT ALI,                    ) | |
| )  | |
| Plaintiff,                       ) | |
| )  | |
| v.                                       ) | 1:18-cv-228 (LO/IDD) |
| )  | |
| NANCY A. BERRYHILL,                      ) | |
| Acting Commissioner of Social Security,  ) | |
| )  | |
| Defendant.                       ) | |
| _____) | |

### REPORT AND RECOMMENDATION

This matter is before the Court on the parties' cross-motions for summary judgment (Dkt Nos. 13, 15). Pursuant to 42 U.S.C. § 405(g), Mohammad Jinnat Ali ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Defendant") denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 423. For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Summary Judgment (Dkt. No. 13) be **DENIED** and Defendant's Motion for Summary Judgment (Dkt. No. 15) be **GRANTED**.

### I. PROCEDURAL BACKGROUND

Plaintiff filed the application for DIB on December 11, 2013, alleging disability commencing on December 26, 2012. Administrative Record ("R.") at 10. After Defendant denied Plaintiff's claim twice, Plaintiff requested an administrative hearing. *Id.* The Administrative Law Judge ("ALJ") held a hearing on March 2, 2017. R. at 28-39. On April 27, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. R. at 7-20.

On January 8, 2018, the Appeals Council for the Office of Disability and Adjudication denied Plaintiff's request for review of the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner for purposes of review under 42 U.S.C. § 405(g). R. at 1-6. Having exhausted his administrative remedies, Plaintiff filed the instant suit challenging the ALJ's decision on March 1, 2018. Compl., Dkt. No. 1. This matter is ripe for disposition because the parties filed cross-motions for summary judgment and waived oral argument.

## II. FACTUAL BACKGROUND

Plaintiff, born on January 6, 1952, was sixty-five years old at the time of the administrative hearing. R. at 31. He studied up to grade 12. R. at 32. In December 2012, the date Plaintiff alleges his disability commenced, Plaintiff worked as a stock clerk at Target for one month. R. at 198. Prior to working as a stock clerk, Plaintiff worked as a cashier at Shell Gas Station from May 2004 to March 2012. R. at 198. Plaintiff also worked at 7-Eleven as a cashier and stock clerk from February 2002 to July 2005. *Id.* Plaintiff is married and has at least one son. R. at 383.

### A. Medical Evidence

Plaintiff was diagnosed with diabetes in June 2005. R. at 242. As of July 1, 2005, the record shows that Plaintiff had experienced urinary frequency and blood in his urine for one month and had to go to the restroom every thirty minutes. R. at 248. Shree Subhash, M.D. prescribed Cipro, and suggested a Prostate Specific Antigen Test ("PSA"), an Intravenous Pyelogram ("IVP"), and cystoscopy. *Id.* Later in July 2005, Dr. Subhash determined that Plaintiff had an enlarged prostate. R. at 246. He also recommended several options to Plaintiff to address his urinary frequency; Plaintiff chose Transurethral Microwave Technology ("TUMT"). *Id.* Plaintiff had TUMT on July 27, 2005, tolerated the procedure well, and had the catheter removed

2

two days later. R. at 247.

Plaintiff suffered from a stab wound to his back in March 2007 by an unknown assailant. R. at 243, 259. He went to the emergency room to get treatment for the wound and was released the same day. R. at 257. He was prescribed Cymbalta, Neurontin, and Flector Patch to treat the pain. R. at 243. The treatment records for that visit showed that Plaintiff had clear lungs, no enlarged heart, a tourtous aorta, no pneumothrax, and no acute cardiopulmonary processes. R. at 281-82.

Based off notes from an office visit in October 2012 with his treating physician Madina Haque, M.D., Plaintiff stopped taking "all medications" two years prior to the visit for unclear reasons, and stopped doctor follow-up visits for financial reasons. R. at 308. In that same office visit, she noted that Plaintiff was "extremely non complian[t]" because he was instructed to go to the emergency department after noting that his type II diabetes, hypertension, and hyperlipidemia were all major problems and uncontrolled, but he declined and said he felt fine. R. at 309. At the time, he did not have eye pain nor visual changes, no urinary frequency, no chest pain, and his spine was normal without deformity or tenderness. R. at 308-09. Plaintiff had no heart murmur, no swelling in his chest, no deformities of his extremities, a normal spine, normal musculosketal symmetry, and appeared to be well-nourished and in no distress. R. at 309.

On January 7, 2014, Dr. Haque opined that it would be beneficial for Plaintiff to receive disability benefits because he was suffering from prostate problems, prostate surgery, uncontrolled diabetes, hypertension, neuropathy, visual problems from retinopathy, and severe back pain due to his stab injury. R. at 325. However, in looking at the record, it is not clear what Dr. Haque based her conclusion on. The record is void of detailed evidence that Dr. Haque could have relied on for determining that Plaintiff could not work except for a laboratory report from

November 2013. R. at 321. Those lab tests showed that Plaintiff's hemoglobin A1c level was consistent with diabetes and that his cholesterol and triglycerides levels were high. But there is no information concerning Plaintiff's mobility, pain levels, nor other physical impairments that would have impacted his ability to work. R. at 321-34.

During an office visit in May 2014, Assaf T. Gordon, M.D., found that Plaintiff was well-developed and well-nourished, even though Plaintiff said his primary area of pain was in his mid-back and described it as "throbbing . . . aching . . . burning and severe." R. at 379. His pain level was a seven out of ten and was triggered when he stood, walked, laid flat, and bent forward and backward. *Id.* At the time, Plaintiff was not taking any medications. *Id.* Dr. Gordon noted that Plaintiff's manual motor testing for upper extremities was normal except for shoulder abduction. R. at 380. He also had normal standing balance, normal gait, posture, and muscle bulk/tone. *Id.* Dr. Gordon suggested that comprehensive pain management be initiated, as well as physical therapy, medications, and interventional procedures. However, Dr. Gordon did not state Plaintiff was incapable of working. R. at 381.

On August 5, 2014, Sina J. Sabet, M.D. conducted a diabetic eye exam on Plaintiff and noted that Plaintiff's main complaint was of back pain, and when it became really bad, the pain projected to his head and eyes. R. at 286.[1] Plaintiff also reported to Dr. Sabet that his diabetes and hypertension were uncontrolled, and that he had headaches and forehead pressure. *Id.* During the exam, Plaintiff told Dr. Sabet that he is "able to do what he wants to do in terms of visual demands of daily tasks" like reading and watching television. R. at 287. Dr. Sabet noted that there was mild diabetic retinopathy in both eyes but no ophthalmic intervention was indicated; she recommended that Plaintiff be required to only have an annual exam. *Id.*

---

[1] Although the Court Transcript Index in the record lists the date of Dr. Sina Sabet's exam as January 5, 2014, the date of visit on the evaluation is August 5, 2014.

4

In February 2017, Dr. Haque again opined that Plaintiff was unable to work. R. at 393. Dr. Haque noted that Plaintiff was experiencing pain and weakness in his upper right and lower extremities especially during walking. R. at 394. Dr. Haque noted that Plaintiff could sit for thirty minutes and stand for twenty minutes, and that at most, could rarely carry less than ten pounds. R. at 396-97. Dr. Haque also noted that Plaintiff could not twist, stoop, crouch, climb stairs, nor climb ladders. R. at 397. However, she also noted that Plaintiff was capable of low stress work. R. at 398.

### C. State Agency Opinion Evidence

The State Agency's medical consultants determined that Plaintiff's impairment or combination of impairments did not significantly limit physical or mental abilities to do basic work activities. R. at 46, 59. This determination was based on findings that some of Plaintiff's conditions were not severe enough to be considered disabling. R. at 47, 59.

One of the state agency physicians, Gurcharan Singh, M.D., in April 2014 opined that Plaintiff's condition did not result in significant limitations in his ability to perform work activities, and that his condition was not considered disabling. R. at 47. Specifically, Plaintiff's diabetes, hypertension, spine disorders, visual impairments, urinary tract disorder, and migraines were all labeled as "non-severe." R. at 46. His spine was normal, his diabetes only affected his vision but he could still see with glasses, and his blood sugar level was "better than before." R. at 45. Dr. Singh commented that Plaintiff's impairments could improve with proper medical care and compliance, noting among other things, that his blood pressure was high because he had not taken medicine for five days and did not have Obamacare because of high cost. *Id.*

The other state agency physician, Harold Ramsey, M.D., found that Plaintiff could perform the tasks associated with a cashier II in August 2014. R. at 58. He marked Plaintiff's

5

impairments—diabetes, hypertension, spine disorders, visual impairments, urinary tract disorders, and migraines—all as non-severe. R. at 56. Although Plaintiff's vision had worsened and he had some difficulty with lifting, bending, standing, walking etc., he could still walk two miles before needing to stop and rest. R. at 55. Additionally, Plaintiff could do personal care, household chores, shop, and go to the mosque. *Id.* Thus, Dr. Ramsey concluded that Plaintiff's impairments did not significantly limit his physical and mental ability to do work activities. R. at 56.

### D.  Administrative Hearing Testimony

On March 2, 2017, Plaintiff testified before an ALJ. R. at 30. At the time, Plaintiff was five feet two inches and weighed one hundred nine (109) pounds. R. at 32

Plaintiff last worked in 2012 at Target as a stock person where he moved supplies that weighed about eight pounds. R. at 32-33. Before working at Target, Plaintiff was a cashier at a gas station. R. at 32. While working at the gas station, he did not have to lift objects. *Id.* Plaintiff testified that he stopped working because he was very weak and had severe back pain and prostate issues. R. at 33. Specifically, Plaintiff stated that after he was stabbed in 2007, he was unable to work because of the pain from his injury. *Id.* When asked to describe the pain, Plaintiff pointed to the starting point of the pain, and said that the pain moved to his hand, arm, shoulder, and then his head. *Id.* When the pain started, Plaintiff's head hurt and he then had vision problems. *Id.* The vision problems then caused him to not walk properly and his right hand and leg would go numb. *Id.* Plaintiff went back to work two months after the stabbing but said that he could not perform his job as he once did before the injury. R. at 34.

Upon returning to work following the stabbing, Plaintiff said that he had "high diabetes" and a high sugar level because he was very weak. *Id.* Plaintiff's vision was impacted five to six

times a day because of his diabetes and when he moved his arms, which triggered pain from the stab wound. *Id.*

Regarding his prostate issues, Plaintiff's wife always helped him in the restroom. *Id.* He was unable to sit down properly and had difficulty getting up, and he took a long time overall when using the restroom. R. at 34-35. Plaintiff went to the restroom three times during the day and twice at night. R. at 34.

In terms of carrying items, Plaintiff was unable to carry anything with his right hand or arm. R. at 35. He is right-handed so his wife helped him with eating. R. at 35-36. He could not bend, stoop, or crawl. R. at 35. Plaintiff testified that he could not reach overhead nor climb stairs. R. at 36. He did use a cane but could not stand up straight for longer than ten minutes and needed assistance when getting up from sitting down. *Id.* While sitting down, Plaintiff said the pain traveled to his lower back, which caused his back to stiffen. R. at 37.

Plaintiff testified that he was in pain all the time and that painkillers only made the pain a little better. R. at 37. The painkillers did cause side effects and Plaintiff said he was often dizzy, tired, and very weak because of the medication. *Id.* Because of his pain, Plaintiff was unable to nap nor sleep for more than thirty minutes at a time. *Id.* When asked how he passes the time during the day, Plaintiff stated that his wife woke him up and helped him go to the restroom. *Id.* She or their son helped him get dressed. R. at 38. They then ate breakfast in the living room, Plaintiff read the newspaper before and after lunch, and then he continued to sit down or walk around. R. at 37-38.

### III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, this Court is limited to determining whether the decision was supported by substantial evidence in the record and

whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is more than a mere scintilla but less than a preponderance of the evidence. *Craig*, 76 F.3d at 589. An ALJ is required to analyze all relevant evidence and sufficiently explain his or her findings. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997). In reviewing the record for substantial evidence, the court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). If the ALJ's determination is not supported by substantial evidence in the record, or if the ALJ has made an error of law, the district court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The Commissioner's factual findings, if supported by substantial evidence, are conclusive and must be affirmed. *Perales*, 402 U.S. at 390.

The Fourth Circuit applies a harmless error analysis in the context of social security disability determinations. *See Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir.2015); *Hammond v. Colvin*, No. 1:12-CV-01177(AJT), 2013 WL 5972432, at *6 (E.D. Va. Nov. 8, 2013). The harmless error doctrine prevents a remand when the ALJ's decision is "overwhelmingly supported by the record though the agency's original opinion failed to marshal that support" and a remand would be "a waste of time." *Williams v. Berryhill*, No. 1:17-CV-167(TCB), 2018 WL 851259, at *8 (E.D. Va. Jan. 18, 2018) (citing *Bishop v. Comm'r of Soc. Sec.*, 583 Fed.Appx. 65, 67 (4th Cir. 2014) (per curiam)). An ALJ's error may be deemed harmless when a court can

conclude on the basis of the ALJ's entire opinion that the error did not substantively prejudice the claimant. *See Lee v. Colvin*, No. 2:16-CV-61(RJK), 2016 WL 7404722, at *8 (E.D. Va. Nov. 29, 2016). When reviewing a decision for harmless error, a court must look at "[a]n estimation of the likelihood that the result would have been different." *See Morton-Thompson v. Colvin*, No. 3:14-CV-179(REP), 2015 WL 5561210, at *7 (E.D. Va. Aug. 19, 2015) (citing *Shineski v. Sanders*, 556 U.S. 396, 411–12 (2009)).

## IV. ANALYSIS

### A. Determining Disability and the Sequential Analysis

The Social Security Regulations define "disability" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). To meet this definition, the claimant must have a severe impairment or impairments that make it impossible to do past relevant work or any other substantial gainful activity that exists in the national economy. *Id.*; *see Heckler v. Campbell*, 461 U.S. 458, 460 (1983). The ALJ is required to employ a five-step sequential evaluation in every Social Security disability claim analysis to determine the claimant's eligibility. Specifically, the ALJ must consider whether the claimant: (1) is engaged in substantial gainful activity;[2] (2) has a severe impairment; (3) has an impairment that equals a condition contained within the Social Security Administration's official Listing of Impairments;

---

[2] Substantial gainful activity ("SGA") is work that is both substantial and gainful as defined by the Agency in the Code of Federal Regulations. Substantial work activity "involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks, hobbies, therapy, school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

(4) has an impairment that prevents past relevant work;[3] and (5) has an impairment that prevents her from any substantial gainful employment. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). After step three of the analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. §§ 416.920(e)–(f), 416.945(a)(1). *Morris v. Berryhill*, No. 3:16-CV-587(MHL), 2017 WL 4112365, at *6 (E.D. Va. Aug. 30, 2017), *report and recommendation adopted*, 2017 WL 4108939 (E.D. Va. Sept. 15, 2017).

**B.    ALJ's Findings**

The ALJ found that Dr. Haque's opinion evidence was 1) not supported by clinical findings nor diagnostic imaging, 2) that the last time Dr. Haque treated Plaintiff was in January 2014, and 3) that overall, Plaintiff's examinations were unremarkable. R. at 15. Concerning the State agency medical reviews, the ALJ gave greater weight to the opinions of Drs. Singh and Ramsey given Plaintiff's sporadic treatment, unremarkable examinations, and the doctors familiarity with the standards of the Act. *Id.* In accordance with the five-step sequential analysis, the ALJ made the following findings of fact and conclusions of law. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 26, 2012, the alleged onset date. R. at 12. At step two, the ALJ found that while Plaintiff suffered from the following impairments—diabetes, mellitus, prostate issues, vision issues, hypertension, back pain, and migraines—these were not severe enough to significantly limit Plaintiff's ability to perform basic work activities. *Id.* Therefore, the ALJ determined that Plaintiff did not have any severe impairments and thus was not disabled under the Act. R. at 15.

---

[3] Past relevant work is defined as substantial gainful activity in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 404.1560(b), 404.1565(a).

10

C. **Cross-Motions for Summary Judgment**

In Plaintiff's Memorandum in Support of Plaintiff's Motion for Summary Judgment ("Pl. Br."), he claims that the ALJ erroneously ruled that his impairments, singly or in combination, are not severe. Pl. Br. at 4, Dkt. No. 14. Specifically, Plaintiff argues that the ALJ rejected Plaintiff's testimony and supporting medical records. *Id.* According to Plaintiff, the ALJ wrote that Plaintiff "believes" his medications cause side effects, which indicated that the side effects were not true. *Id.* Secondly, Plaintiff states that the ALJ gave little weight to Dr. Haque's opinion and that the ALJ failed to develop the record. *Id.* Plaintiff argues that the ALJ instead gave deference to non-treating, non-examining State agency physicians, and that the ALJ failed in his duty to recontact Dr. Haque for clarification if he felt her report was insufficient. *Id.* Defendant seeks summary judgment on the basis that the ALJ's finding, that Plaintiff did not have a severe impairment, is amply supported by substantial evidence. Def.'s Mem. of Law in Supp. of Def.'s Cross-Mot. for Summ. J. and in Opp'n to Pl.'s Mot. for Summ. J. ("Def. Br."). Dkt. No. 16. Defendant focuses on disputing the arguments propounded by Plaintiff. *Id.* Therefore, the undersigned will address Plaintiff's objections to the ALJ's decision as presented in Plaintiff's brief.

1. **Applicable Law**

In reviewing the Commissioner's decision to deny benefits, this Court must determine whether the ALJ's decision was supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). An ALJ is required to analyze all relevant evidence and sufficiently explain his or her findings. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997). "Unless [an ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits," a reviewing

court cannot find that the ALJ's decision is supported by substantial evidence. *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977).

As previously discussed, this Court reviews an ALJ's disability determination in social security cases using a harmless error analysis. *See Mascio*, 780 F.3d at 639; *Hammond*, 2013 WL 5972432, at *6. An ALJ commits harmful error when he fails to discuss all of the relevant evidence. *See Morton-Thompson*, 2015 WL 5561210, at *7; *James v. Colvin*, No. 3:13-CV-547(JRS), 2014 WL 4630598, at *17 (E.D. Va. Sept. 11, 2014). For example, in *Morton-Thompson*, the ALJ determined that the plaintiff's RFC included the ability to perform a full range of sedentary work. *Morton-Thompson*, 2015 WL 5561210, at *7. However, the ALJ failed to discuss the plaintiff's ability to walk or stand for a full work day, and the definition of "sedentary work" includes a certain amount of walking and standing. *Id.* This Court remanded the case because it found that the ALJ's failure to explicitly discuss the plaintiff's abilities to walk or stand was harmful error. *Id.* This Court reasoned that the evidence the ALJ failed to discuss "may have changed the ALJ's determination of the [p]laintiff's RFC." *Id.* Therefore, an ALJ must discuss relevant evidence for the ALJ's decision to be supported by substantial evidence. *Morton-Thompson*, 2015 WL 5561210, at *7.

When evaluating medical opinion evidence, the ALJ must assign the evidence weight based on the following factors: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his or her opinion; (4) the consistency of the opinion; (5) whether the physician is a specialist in the area in which he or she is rendering an opinion; and (6) any other relevant factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c), (e). The ALJ need only be specific enough to allow a reviewing court to determine the weight given to a medical opinion

and the reasons for that weight. *See* SSR 96-2p, 1996 WL 374188, at *5 (S.S.A.).

However, "an ALJ is not required to discuss each piece of evidence" included in the record. *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). Furthermore, an ALJ's "failure to cite specific evidence does not establish that the ALJ failed to consider it." *Phillips v. Barnhart*, 91 Fed. App'x 775, 780 n.7 (3d Cir. 2004); *see also Gullace v. Astrue*, No. 1:11-cv-0755, 2012 WL 691554, at *24 (E.D. Va. Feb. 13, 2012) (citing both *Black* and *Phillips*).

### a. Evaluation of ALJ's Error

Plaintiff claims that the ALJ erred in ruling that Plaintiff's impairments, either singly or in combination, are not severe. He bases that conclusion on 1) the ALJ rejecting his testimony and supporting medical records, and 2) the ALJ giving little weight to Dr. Haque's opinions and thus failing to develop the record.

#### 1. The ALJ Rejecting Plaintiff's Testimony and Supporting Medical Records

Regarding the ALJ rejecting Plaintiff's testimony, Plaintiff argues that the ALJ disregarded Plaintiff's statements concerning the side effects of his medications, as if Plaintiff was not being truthful. Pl. Br. at 6. To explain this point, Plaintiff emphasizes that the ALJ wrote Plaintiff "believes they cause side effects including tiredness, dizziness, and weakness." *Id.* Plaintiff also argues that Dr. Haque's February 2017 report confirms Plaintiff's testimony that he was incapable of performing sedentary work. *Id.* at 23 He claims that the ALJ failed to mention that Plaintiff stopped medication or follow-up visits due to financial reasons as noted in Dr. Haque's report from October 2012. *Id.* at 6. In contrast, Defendant argues that the ALJ did not disregard Plaintiff's testimony, but rather explained in his opinion why he found Plaintiff's statements at the hearing inconsistent with objective evidence contained in the record. Def. Br. at 17. First, Defendant points out that despite Plaintiff's impairments concerning diabetes, high

13

blood pressure, back pain, heart problems, vision problems, urination problems, and constant headaches, Plaintiff did not receive consistent treatment for these conditions. *Id.* Even when seeking treatment, Defendant argues that the examination results were normal. *Id.* at 18. Further, Defendant states that Plaintiff was non-compliant with treatment, noting that Plaintiff once refused to go to the emergency room because he "felt fine," chose not to follow-up with spinal specialist visits, and stopped medications for blood sugar and blood pressure. *Id.* at 17-19.

The undersigned agrees that the ALJ sufficiently evaluated Plaintiff's testimony alongside the record, and properly concluded that Plaintiff's statements concerning the intensity and persistence of his impairments were inconsistent with other evidence. Not only did the ALJ reference Plaintiff's testimony in detail, the ALJ cited several medical documents that noted that Plaintiff's impairments, based on the evidence in the record, caused no significant changes in functional abilities. Even Dr. Haque's February 2017 reported indicated that Plaintiff was capable of low stress work, despite his difficulty with standing, sitting, and lifting, which Plaintiff ignores. Although Plaintiff indicated at times he could not afford medication, there is no showing based on the record that financial difficulties were the sole reason for him stopping medication and follow-up visits. The Court notes that financial issues were stated twice during office visits by Plaintiff, in October 2012 and April 2014. Yet, even if Plaintiff was encountering financial problems and was not able to maintain proper medical treatment because of it, that is not a sufficient basis to find that the ALJ erred in his determination. Therefore, the undersigned finds that the ALJ did not reject Plaintiff's testimony nor the supporting medical records.

### 2. The ALJ Giving Little Weight to Dr. Haque's Opinions and thus Failing to Develop the Record

Plaintiff claims that the ALJ gave little weight to Dr. Haque's, Plaintiff's primary treating physician, opinions and instead gave deference to the State agency physicians, whose opinions

14

were three years old. Pl. Br. at 6. Plaintiff does not argue anything further about the opinions of the State agency physicians. Instead, Plaintiff discusses that the ALJ failed to develop the record because he concluded that Dr. Haque's opinion was not supported by clinical findings nor diagnostic imaging, yet further down in the opinion the ALJ referenced diagnostic imaging that was ordered by Shoshana Katz, PA-C and performed by Dr. Gordon. *Id.* Further, Plaintiff argues that the ALJ had a duty to contact Dr. Haque for clarification if he felt her report was insufficient and cites to *Perez v. Charter* from the Seventh Circuit for support. *Id.* at 7.

Defendant argues that Dr. Haque's 2014 and 2017 medical source statements, which stated that Plaintiff should be approved for disability, were given little weight by the ALJ because they were inconsistent with Plaintiff's examinations even from Dr. Haque herself. Def. Br. at 21. Between October 2012 and January 2014, Defendant states that Dr. Haque's examinations showed that Plaintiff had a normal spine, normal range of motion, normal musculoskeletal symmetry, and normal gait among other things. *Id.* at 18. In addition, Dr. Haque noted that Plaintiff was extremely non-complaint with medications and medical care. *Id.* The ALJ noted that the last examination Dr. Haque conducted on Plaintiff was in January 2014, yet in June 2014 and February 2017, Dr. Haque still concluded without giving much detail, that Plaintiff was unable to work. *Id.* at 21-22. Defendant points out that in the June 2014 letter, Dr. Haque noted that Plaintiff's MRI findings reported "severe Radiculopathy" although there was no indication of that in the MRI report or specialist's examination. *Id.* at 22. Regarding Plaintiff's argument that the ALJ did not fully develop the record, Defendant argues that under 20 C.F.R. § 404.1520(b)(2), an ALJ has discretion to seek additional or clarifying information if the information in their possession is not sufficient to make a determination. *Id.* at 24. Thus, they conclude that the ALJ properly performed his duty here because he reviewed the entire medical

record and determined that there were no severe impairments. *Id.*

Here, the ALJ appropriately evaluated Dr. Haque's opinion as a treating physician. Based on the ALJ's findings that Dr. Haque's opinions supporting disability were internally inconsistent and inconsistent with the record, the ALJ had discretion to give the opinion less weight and did not have to contact Dr. Haque for further clarification. Although *Perez v. Charter* is not binding on this Court, it does not further Plaintiff's argument because the Seventh Circuit found that an ALJ was not obligated to request further information from a treating physician when that treating physician did not order medical tests of the plaintiff, and nothing at the hearing indicated that retrospective assessments would reveal useful information. *Perez v. Charter*, 77 F.3d 41, 48 (2d Cir. 1996). Based on review of the record, the undersigned also finds that the ALJ did not fail to properly develop the record. The ALJ did not need to contact Dr. Haque for additional information because Dr. Haque herself did not order the diagnostic imaging and there is nothing to indicate that further assessments would reveal useful information for the ALJ's determination that there were no severe impairments. The ALJ gave proper weight to Dr. Haque's opinions and the State agency opinions because he provided a narrative of how the medical evidence did or did not support each conclusion. The undersigned is persuaded that the ALJ considered Plaintiff's entire record and sufficiently articulated the reasons for his determination. Therefore, the undersigned finds that the ALJ did not err in giving Dr. Haque's opinion less than controlling weight nor did he fail to develop the record.

## V. RECOMMENDATION

For the reasons set forth above, the undersigned Magistrate Judge recommends that Plaintiff's Motion for Summary Judgment be DENIED and Defendant's Motion for Summary Judgment be GRANTED.

## VI. NOTICE

By mailing copies of this Report and Recommendation, the parties are notified that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record.

January 7, 2020
Alexandria, Virginia

/s/
Ivan D. Davis
United States Magistrate Judge